Edna Henry (employee) brought this workmen's compensation action against the Health Care Authority of the City of Huntsville, d/b/a Huntsville Hospital (employer), to recover benefits for injuries sustained in an accident which allegedly occurred during her employment. The trial court found that the employee is permanently and totally disabled within the meaning of the workmen's compensation laws. The employer appeals. We affirm.
At the outset we note that the standard of review in workmen's compensation cases is a two-step process. This court first must determine if any legal evidence supports the trial court's findings and then must determine whether any reasonable view of that evidence supports the trial court's judgment.Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
The record reveals that the employee is a registered nurse who was working in the emergency department at the employer hospital. On January 15, 1988, while helping remove a patient and stretcher out of an ambulance, she injured her right knee. She was treated and released from the emergency room.
The employee continued to work until September 28, 1988, without seeking additional medical treatment. Her testimony reveals that she suffered pain during that time, but that, although the pain worsened, she was able to work. On September 28 she was examined by Dr. Sammons, an orthopedic surgeon, and complained of pain from the knee to the hip. She checked a box on a form while she was at Dr. Sammons's office indicating that she had been injured in an automobile accident. However, *Page 326 
the employee testified that she apparently made a mistake and that she had never been in an automobile accident.
The employer then referred the employee to a physician in its emergency room, who referred her to Dr. Miller, another orthopedic surgeon. She complained to Dr. Miller of pain that began at the back of the knee and extended down the back of the leg. Problems with the knee required arthroscopic surgery in the right knee, which was performed by Dr. Miller. Subsequent to the surgery, an infection developed in the knee. This required further arthroscopic knee surgery performed by Dr. Maddox followed by physical therapy and medication. Doctors' testimony indicates that the employee then developed arthritis in the knee, which could have been caused by either the injury or the infection.
The employer provided sedentary type work for the employee, but in August 1989 it informed the employee that, based on a report by a Dr. Nichols, whom she had seen in June 1989 in Birmingham, and due to her injury, it could no longer allow her to work.
The employer informed the employee that it had scheduled an appointment on December 4, 1989, with Dr. Donald Slappey in Birmingham for an orthopedic evaluation. The employee responded in a letter that, since she had already been examined by six doctors in Huntsville and one in Birmingham, she was unwilling to travel to Birmingham at that time to see Dr. Slappey. However, she was willing to see any orthopedic surgeon in Huntsville as was necessary. Due to this refusal, the employer suspended benefits pursuant to § 25-5-77(b), Ala. Code 1975, as of the date of the scheduled appointment. The payment of benefits resumed on October 22, 1990.
Dr. Black, another orthopedic surgeon who examined the employee, testified at deposition that she complained of pain with walking, sitting, and standing; of chronic swelling of the knee; and of grinding noise with movement. Treatment involved medication, braces, and injections. Dr. Black performed further arthroscopic surgery in March 1990. Physical therapy was then prescribed, and improvement was noticed at first. During this time the employee was examined and treated by rehabilitation specialists at Optimal Health. However, the symptoms increased with physical therapy, and Dr. Black advised the employee to discontinue therapy.
Dr. Black indicated that her condition had become "intractable," that is, that she is having pain all the time that is not relieved by any of the treatments. Her condition is permanent and will probably worsen. The employee reported to Dr. Black that pain affects her whole body, as well as her ability to sleep.
The employee was then referred to Dr. Shergy, a rheumatologist, in October 1990. He concluded, based on complaints of pain in the knee, poor sleep pattern, interruption of lifestyle, fatigue, and tender points, that she suffered from chronic pain syndrome. She was also diagnosed as having osteoarthritis, a condition that can be produced and accelerated by a traumatic injury or an infection.
On May 29, 1991, the employer filed a motion pursuant to § 25-5-77(b), Ala. Code 1975, requesting that the trial court require the employee to submit to an examination in Birmingham by a physical rehabilitation specialist, Dr. Richard McFague, or by Optimal Health. The motion was denied.
The employee testified that she experiences difficulty if she drives for more than fifteen minutes. She is taking four types of pain medication that make her drowsy and cause stomach pain. She is no longer able to take the long walks that she used to enjoy, and she is only able to sleep two to three hours a night. Her pain extends from her right knee to her hip, and if she does much walking, her left knee starts hurting. Her back also hurts.
In addition, both a vocational consultant and a rehabilitation expert testified that the employee had a 100% vocational disability rating.
The employer first contends that the employee's refusal to submit to treatment was unreasonable; therefore, it contends *Page 327 
tends, the employee was not entitled to receive benefits and the trial court's denial of its motion to require the employee to submit to examination was error.
Section 25-5-77(b), Ala. Code 1975, provides in pertinent part as follows:
 "If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical service or physical rehabilitation which the employer elects to furnish under the provisions of this chapter, his right to compensation shall be suspended and no compensation shall be payable for the period of such refusal."
It is well settled that an injured employee may refuse medical treatment or surgical procedures where the refusal is not unreasonable and, further, that the determination of reasonableness is a question of fact for the trier of fact.Cerrock Wire Cable Co. v. Johnson, 533 So.2d 622
(Ala.Civ.App. 1988); Scott v. Alabama Machinery Supply Co.,52 Ala. App. 459, 294 So.2d 160 (Ala.Civ.App. 1974). While we do not apply the same standard to test the reasonableness of a request for a mere examination, we do find that such a determination is also a question of fact for the trier of fact.
In the present case no evidence was presented to indicate that there was a reasonable expectation that the examination could lead to treatment that would improve the employee's condition. In addition, we note that the employee did submit to treatment by a number of doctors recommended by the employer, which treatment, we conclude, was preceded by an examination. Important here is the fact that she submitted to physical therapy, which worsened her condition, and there was no evidence presented that further treatment might improve her condition. Therefore, under the facts of this case, we cannot find that the trial court erred in denying the employer's motion.
Next the employer contends that the employee's recovery must be limited to that set forth in § 25-5-57(a)(3)a., Ala. Code 1975, for the loss of the use of a "scheduled member."
The trial court stated in its order that the "injury is now complicated by other physical problems such as arthritis and subsequent post-surgical infection in the knee which, when combined with the on-the-job injury, causes her to suffer from a permanent physical impairment to her entire body." The trial court further stated that its finding was based on evidence in the depositions, exhibits, and testimony at trial, as well as the subjective testimony of the employee.
If the injury to one part of the body affects the other parts of the body and produces a greater or more prolonged incapacity than the specific injury would naturally produce, or causes an abnormal and unusual incapacity with result to the member, then the employee is not limited in his or her recovery to the amount allowed under the schedule for injury to one member.Whitehead Forest Products, Inc. v. Huggins, 579 So.2d 657
(Ala.Civ.App. 1991). As indicated above, evidence was presented that indicated that the employee developed arthritis and an infection due to the injury, that there is pain in her hip and back, and that her ability to sleep has been affected. In addition, the injury has affected her ability to work and to earn a living. Therefore, based on the above, we find that there was ample evidence before the trial court to indicate that recovery should not be limited to that listed in the schedule and further find that the trial court did not err in refusing to adhere to the schedule.
We hold that there is legal evidence to support the trial court's findings and that a reasonable view of the evidence supports its judgment. This case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 328