Windy Dawn Myers, an employee of 3-M Company, Inc., suffered two injuries to her right shoulder during the course of her employment. The first injury occurred on July 2, 1992, and required surgery. On April 28, 1993, eleven days after returning to work at 3-M following her surgery, Myers suffered another work related injury to the same shoulder. As a result of these injuries, Myers filed a complaint in the Marion County Circuit Court on November 8, 1993, seeking worker's compensation benefits.
The trial court held an ore tenus proceeding on November 21, 1994. The only testimony presented to the trial court was that of Myers, and Marguerite Kelley, the human resources personnel manager of 3-M. Myers testified that she had received two separate injuries as a result of separate accidents. On February 15, 1995, before the trial court entered a judgment, Myers filed a motion to allow additional testimony and medical records. The trial court granted Myers's motion and admitted the deposition of Dr. Les Fowler, Myers's treating physician, into evidence. On April 1, 1996, the trial court entered a judgment, making the following findings:
 "This cause coming on to be heard on the pleadings, the stipulations of the parties, and the oral testimony of the witnesses in open court together with exhibits, now upon consideration of the foregoing, the Court makes the following findings of fact:
 "1. That the plaintiff, Windy Dawn Myers, was an adult female 25 years of age at time of hearing; that she has a twelfth grade education; that plaintiff's employment training and history is that of a manual laborer, and that she is not now trained or suited for any type of work or employment other than as a manual laborer; that the plaintiff was an employee of the defendant, 3-M Company, Inc., on and prior to July, 1992 and April 28, 1993 for more than the length of time required by *Page 136 
law; that both the employee and employer were subject to the Alabama Worker's Compensation Laws at all relevant times; that on, to-wit, July 2, 1992 and April 28, 1993, plaintiff Windy Dawn Myers sustained two injuries as the result of separate accidents arising out of and in the course of her said employment with defendant, such injuries being to plaintiff's right shoulder; that the defendant received proper notice of said injures and accident within the time required by law, and that plaintiff did thereafter receive medical treatment for her injuries, with the knowledge of defendant; that the medical expenses incurred by plaintiff in said injuries were both necessary and reasonable.
 "2. Plaintiff's average weekly wages at date of injuries were stipulated respectively, to be $614.23, two-thirds of which is $409.49 and $543.66, two-thirds of which is $362.44.
 "3. Plaintiff sustained a temporary total disability as a result of said accidents for twenty-five weeks and four days, for which she has been paid.
 "4. Post-injury earnings are an unreliable basis for determining earning ability.
 "5. As a result of said accidents, plaintiff Windy Dawn Myers sustained a permanent injury after having sustained another permanent injury in the same employment, resulting in a permanent physical impairment of thirty per cent (30%) to the body as a whole and resulting in permanent partial disabilities to the extent of thirty per cent (30%) to the body as a whole; that said plaintiff sustained a permanent partial loss of ability to earn of thirty per cent (30%) and that the weekly benefit due plaintiff for her permanent partial disabilities will, therefore, amount to one hundred eight dollars and seventy-three cents ($108.73) per week for three hundred seventy-four weeks and 3 days.
 "6. The court further finds that plaintiff's attorney, Hon. Tim Wadsworth, is entitled to a fee in the amount of fifteen per cent. (15%) of the total amount of benefits accrued and unpaid, and those to be paid, for his services herein.
 "Now, upon consideration of the foregoing, it is ORDERED, ADJUDGED AND DECREED as follows:
 "1. That the above findings of fact are hereby made the orders of this court.
 "2. That plaintiff Windy Dawn Myers shall have and recover of defendant 3-M as accrued compensation benefits the sum of fifteen thousand seven hundred sixty-five dollars and eighty-five cents ($15,765.85), in permanent partial benefits unpaid from May 17, 1993 through March 27, 1996 being 145 weeks at $108.73 per week.
 "3. That plaintiff Windy Dawn Myers shall further have and recover of defendant 3-M compensation benefits in the amount of $108.73 per week, to be paid during plaintiff's permanent partial disability, for two hundred twenty-nine weeks and 3 days from April 3, 1996.
 "4. That plaintiff's attorney is awarded a lien against all of the aforesaid recovery for compensation benefits accrued and unpaid, and those to be paid, in the amount of 15% for his services herein.
 "5. That plaintiff Myers shall further have and recover of defendant unpaid medical expenses, and of course, future medical expenses as are reasonable and necessary.
 "6. That any claims not herein adjudicated are hereby denied.
 "7. That the costs of this cause, including the $846.15 claimed, are hereby taxed against the defendant, for which if not paid, let execution issue according to law."
(Emphasis added.)
3-M appeals, arguing (1) that the trial court erred by failing to credit the company for the temporary total disability benefits already paid; (2) that the trial court erred in awarding permanent partial disability benefits for a period greater than 300 weeks; and (3) that the trial court's findings on Myers's permanent partial disability to the body as a whole and permanent partial loss of ability to earn were erroneous because they were not supported by the evidence.
The record reveals the following facts. On July 2, 1992, Myers injured the frontal area of her right shoulder while moving a *Page 137 
125-pound box. Myers continued to work at her normal job in the glass bulb department and to earn her normal wages until November 1992. At that time, Dr. Fowler diagnosed Myers with a dislocated shoulder that required surgery. Following Dr. Fowler's diagnosis, Myers notified 3-M, underwent surgery, and remained off work for approximately five months.
Myers returned to work on April 18, 1993, to the same job she was performing on July 2, 1992. She performed her job satisfactorily until April 28, 1993, when her shoulder was injured a second time. Myers testified that the second injury to her was in a different location and caused different limitations than the first injury. Dr. Fowler also treated her second injury, and she remained off work for three more weeks. Myers eventually had another surgery to correct the damage caused by the second injury. The parties stipulated that temporary total disability benefits were paid for the twenty-five weeks and four days that Myers was absent from her job.
 I. The Second Injury
As a prerequisite to its arguments that the trial court erred in awarding compensation benefits, 3-M argues that the trial court erred in finding that Myers suffered a second injury. Because the second injury occurred after August 19, 1992, the new Worker's Compensation Act governs our review. That standard of review was stated by our Supreme Court in Ex parte TrinityIndustries, Inc., 680 So.2d 262 (Ala. 1996).
 "We will not reverse the trial court's finding of fact if that finding is supported by substantial evidence — if that finding is supported by 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
680 So.2d at 268-69 (quoting West v. Founders Life AssuranceCo., 547 So.2d 870, 871 (Ala. 1989)). See also, § 25-5-81(e)(2), Ala. Code 1975.
In asserting that no second injury occurred, 3-M argues a lack of medical evidence showing a separate area of damage. However, 3-M does not address Myers's return to full duty work for three weeks after the first injury or her testimony and evidence as to the later injury and treatment. The law is well settled that the trial court has wide discretion in the review of evidence and is not bound by particular medical evidence.
 "The trial court is not bound by expert testimony, but, having observed the claimant and having heard his testimony, it is able to exercise its own judgment in reaching its conclusions. See Allen v. Diversified Products, 453 So.2d 1063
(Ala.Civ.App. 1984). Further, in arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observations. The trial court may then interpret what it has heard and observed, according to its own best judgment. Armstrong v. Lewis Associates Construction Co., 469 So.2d 605
(Ala.Civ.App. 1984). Additionally, 'the weight of the evidence . . . is not before this court on appeal in a workmen's compensation case.' Bankhead Forest Industries, Inc. v. Lovett, 423 So.2d 899, 900
(Ala.Civ.App. 1982).
Schlumberger Indus. v. Moore, 656 So.2d 818, 821
(Ala.Civ.App. 1994); see also Tarver v. Diamond Rubber Products Co.,664 So.2d 207 (Ala.Civ.App. 1994).
Myers testified that the second injury occurred at a different location. The medical evidence shows that this second injury required a second surgical procedure to repair a tear in cartilage that was not present when the first injury was repaired. After reviewing the record, we conclude that the trial court's finding that Myers had sustained a second successive injury is supported by substantial evidence. Although other inferences could be drawn from all the evidence in this case, it is not the province of this Court to weigh the evidence. Bankhead Forest Industries, supra. Under Trinity, the trial court's finding that Myers suffered a second injury is therefore due to be affirmed.
 II. Award of Disability Benefits
3-M argues that the trial court did not properly credit it for temporary total disability benefits; it further argues that the trial court erred in awarding permanent partial *Page 138 
disability benefits beyond 300 weeks. The award of disability benefits for Myers's shoulder injuries is controlled by two sections of the new Worker's Compensation Act, Ala. Code 1975. The first section is § 25-5-57(a)(3)g., which states, in pertinent part:
 "Compensation for Permanent Partial Disabilities Not Enumerated.
 "For all other permanent partial disabilities not above enumerated, the compensation shall be 66 2/3 percent of the difference between the average weekly earning of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition, subject to the same maximum weekly compensation as stated in Section 25-5-68. If a permanent partial disability, compensation for which is not calculated by use of the schedule in subdivision (a)(3) of this section, follows a period of temporary total disability resulting from the same injury, the number of weeks of the temporary total disability shall be deducted form the number of week payable for the permanent partial disability. Compensation shall continue during disability, but not beyond 300 weeks."
(Emphasis added.)
The second section is § 25-5-57(a)(4)g., which states, in pertinent part:
 "If an employee receives an injury for which compensation is payable while he or she is still receiving or entitled to receive compensation for a previous injury in the same employment, he or she shall not at the same time be entitled to compensation for both injuries, unless the later injury is a permanent injury, as specified in this section, but he or she shall be entitled to compensation for that injury and from the time of the injury which will cover the longest period and the largest amount payable under this article and article 4 of this chapter.
 "If an employee receives a permanent injury as specified in this section, after having sustained another permanent injury in the same employment, he or she shall be entitled to compensation for both injuries, subject to paragraph e. of this subdivision, but the total compensation shall be paid by extending the period and not by increasing the amount of weekly compensation, and in no case for permanent partial disability exceeding 700 weeks."
We note that although § 25-5-57(a)(4)g. appears under the subtitle "Permanent Total Disability," it applies equally to situations involving permanent partial disability. See ChryslerMotor Corp. v. Cole, 563 So.2d 1040 (Ala.Civ.App. 1990).
Examination of the record and the trial court's judgment shows that the trial court found that Myers had sustained two separate injuries resulting in permanent partial disability of a period of 400 weeks. The trial court noted the parties' stipulation that Myers was off work for 25 weeks and 4 days and that she received temporary total disability benefits for that time. The trial court's total award of permanent partial disability benefits was for the period of 374 weeks and 3 days, reflecting that the judgment properly credited temporary total disability benefits to 3-M.
3-M's argument that the trial court erred in awarding permanent partial disability benefits beyond 300 weeks in accordance with § 25-5-57(a)(3)g. is rebutted by the finding of the second injury and the application of § 25-5-57(a)(4)g. Pursuant to § 25-5-57(a)(3)g., the trial court could have awarded weekly compensation for up to 700 weeks. Thus, the trial court's total award of 400 weeks permanent partial disability benefits was not error.
 III. The Finding as to Disability
3-M next argues that the trial court erred in finding Myers 30% permanent partially disabled and in awarding benefits accordingly. Following Myers's second shoulder surgery, her treating physician was deposed. He testified that Myers had a 14% permanent physical impairment to her upper extremity and an 8% impairment to her entire body as of September 27, 1993.
3-M argues that Ala. Code 1975, § 25-5-57(a)(3)i., precludes the trial court's 30% permanent partial disability finding, because, it says, Myers's physician testified that her physical impairment was only 14% to her *Page 139 
upper extremity and 8% to her entire body. Section25-5-57(a)(3)i., states:
 "If, on or after the date of maximum medical improvement, except for scheduled injuries as provided in Section 25-5-57(a)(3), an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability."
3-M argues that the trial court erred in basing the disability rating on Myers loss of ability to earn. She returned to work making the same hourly wage but her average weekly wage decreased because she could not work overtime. We note that no vocational expert testimony was presented. Although Myers's hourly wage increased in 1994, her average weekly wage was still less than before her injuries. Therefore, 3-M's argument is without merit.
Myers's treating physician testified, per deposition, to her impairment rating. However, this court has repeatedly held that "the trial court is not bound by experts' opinions in workmen's compensation cases. Conley v. SCI Systems, Inc., 495 So.2d 698
(Ala.Civ.App. 1986). It may consider all evidence, including its own observations, and interpret the evidence according to its own best judgment. International Paper Co. v. Rogers,500 So.2d 1102 (Ala.Civ.App. 1986)." Wilde v. Taco Bell Corp.,531 So.2d 918 (Ala.Civ.App. 1988).
After a careful consideration of the record, we conclude that the trial court's finding that Myers was 30% permanently partially disabled is supported by substantial evidence. Exparte Trinity, supra. Accordingly, the trial court's judgment is due to be affirmed.
AFFIRMED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in part and dissents in part.